[Civ. No. 19053. Second Dist., Div. Two. June 13, 1952.]

DORIS W. COMSTOCK, Respondent, v. CORONET HEAT-
ING SUPPLY COMPANY, INC. (a Corporation), Ap-
pellant.

Gordon Leslie Cooper for Appellant.

No appearance for Respondent.

McCOMB, J.—From an order dismissing defendant's sec-
ond amended cross-complaint after sustaining of a demurrer
thereto with leave to amend, of which leave defendant did
not avail itself, defendant appeals.

*Facts*: Defendant filed a second amended cross-complaint
in two causes of action,* the first cause of action predicated
upon plaintiff's breach of a contract giving defendant the
exclusive right to sell plaintiff's product in a given area;
the second cause of action predicated upon the theory that
plaintiff had breached its warranty with defendant guar-

---

*Omitting the title of the court and cause the second amended cross-
complaint reads as follows:
"The defendant and Cross-Plaintiff alleges:

I

"That the Cross-defendants, the MODERN HEAT-PANEL, INC. is a
California Corporation, having its principal office in Los Angeles County,
California; that the Cross-defendant, MODERN METAL PRODUCTS COM-
PANY, INC., is a California corporation, having its principal office in
Los Angeles County, California; that the Cross-defendant, MODERN HEAT-
PANEL, INC., is a California Corporation, having its principal office in
Los Angeles County, California; that the Cross-defendant, the MODERN

anteeing that merchandise purchased from plaintiff would be in good order.

Plaintiff filed a demurrer to both counts of the second amended cross-complaint on the ground that each cause of action was uncertain and unintelligible in that it could not be ascertained from the facts alleged in either cause of action in what manner defendant had been damaged. The demurrer

---

METAL PRODUCTS COMPANY and the MODERN METAL PRODUCTS COMPANY, INC., are fictitious firm names.

II

"That at all times mentioned herein, the Cross-defendants were manufacturers of heat panels, also known as Modern Heat Panels, Model heat panels and Coronet Heating Panels.

III

"That on or about the 21st day of July, 1949, the Cross-Plaintiff and the Cross-defendants entered into an agreement in writing, by the terms of which the Cross-defendants gave Cross-plaintiff the exclusive sales rights of both the Modern and Coronet heating panels in the territory comprising of California from Bakersfield north to its Northern border and including the entire states of Oregon and Washington; that by the terms of said agreement, it was further agreed that the Cross-defendants furnish Cross-plaintiff with the Modern and Coronet Heating panels at $51.85 each, net, on the 45,000 B.T.U. dual heaters ordered in one thousand heater lots.

IV

"That believing and relying upon said agreement the Cross-Plaintiff ordered one thousand heaters, as per the agreement on or about the 28th day of July, 1949, and in furtherance of said agreement said Cross-plaintiff arranged with the following named firms in Northern California to handle said heating panels, to wit:

 (1) Oakland Sheet Metal Supply Co., Oakland; and
 (2) Western Plumbing Supply Co., San Jose and Stockton; and
 (3) Fresno Plumbing Supply Co., Fresno; and
 (4) Dalziel Plumbing Supply Co., San Francisco
 (5) Federal Pipe & Supply Co., San Francisco, and
 (6) Grinnell Co., San Francisco, Oakland, Sacramento;
 (7) P. E. O'Hair, and
 (8) Richmond Sanitary Co., Oakland; and
 (9) Jordan Supply Co., San Mateo.

"That Cross-Plaintiff's representatives continued to call on said jobbers from June in 1949 to July, 1950; that during said period of time, the Cross-plaintiff sold to the Oakland Sheet Metal Supply Co., four hundred and forty four heaters; and to the Western Plumbers Supply Co., one hundred and fifteen heaters; and to the Fresno Plumbing Supply Co., sixty two heaters; and to the Federal Pipe and Supply Co., fifty two heaters; that said jobbers in turn installed said heaters in the homes and in the vicinity of said jobbers; that the Cross-defendants warranted that said heaters so sold would be in good condition; that the said heaters were not in good condition and that every heater was defective in that the paint burned off of the grill of said heaters and the grills had to be replaced.

V

"That in about July of 1950, the painted grills were replaced by a baked enamel grill, which corrected the defect in said heaters; that from July, 1949 to July, 1950, Cross-Plaintiff expended and invested in the

was sustained with leave to amend. Defendant having failed to amend within the period allowed by the court, an order dismissing the second amended cross-complaint was entered.

■ *Question: Was the demurrer to the second amended cross-complaint on the ground of uncertainty and unintelligibility properly sustained?*

*Yes.* A mere reading of the second amended cross-complaint shows that facts are not alleged in either purported cause of action from which it is possible to ascertain how or in what manner defendant was damaged by the alleged breach of contract by plaintiff.

---

marketing, advertising, plant expansion, replacement of defective grills and in the procuring of jobbers as hereinabove mentioned, the sum of five thousand dollars ($5,000.00).

### VI

"That by July of 1950 the Cross-Plaintiff had procured the jobbers hereinabove mentioned, all of which were in the northern part of California; that as a direct result of the work on the part of the Cross-plaintiff in the securing of the Jobbers, advertising, installing of said heaters in Northern California, together with having replaced the grills with enamel grills, the said Cross-Plaintiff established a market in Northern California reasonably earning a profit of $10,000.00 for the year of July, 1950 to July, 1951.

### VII

"That on July 5, 1950, the Cross-defendant, Modern Metal Products Company, wrote the Cross-Plaintiff a letter stating that it had established the Jordan Supply Company as their exclusive Jobber for Northern California; that the Jordan Supply Company was contacted by Cross-Plaintiff in June of 1949 and Cross-Plaintiff received an order from the Jordan Supply Company for two wall heaters as samples, prior to July 5, 1950.

### VIII

"That in February of 1950 and without the consent of the Cross-Plaintiff, the Cross-defendant, MODERN METAL PRODUCTS COMPANY, employed CHARLES H. WHITE of Burlingame, California, which was within the territory given by the Cross-defendants to Cross-Plaintiff, to circulate a price list ten per cent below that of which the Cross-defendants agreed to furnish the said heat panels to Cross-Plaintiff, and employed the said CHARLES H. WHITE to solicit customers of the Cross-Plaintiff's in Northern California, the territory given to Cross-Plaintiff by the Cross-defendants.

### IX

"That by reason of the conduct of the said Cross-defendants, the said Cross-defendants in employing the said CHARLES H. WHITE, as hereinabove alleged, and the JORDAN SUPPLY COMPANY, as hereinabove alleged, the OAKLAND SHEET METAL SUPPLY COMPANY of Oakland, California, sold one hundred heaters in March of 1950, and one hundred and twenty heaters in June of 1950; that in August of 1950, the OAKLAND SHEET METAL SUPPLY COMPANY stated that the JORDAN SUPPLY COMPANY was offering to sell said heaters to the customers of the OAKLAND SHEET METAL SUPPLY COMPANY at less than cost to the OAKLAND SHEET METAL SUPPLY COMPANY, and for that reason the OAKLAND SHEET METAL SUPPLY COMPANY discontinued serving as Jobber for the Cross-Plaintiff;

Where, as in the instant case, damages do not necessarily result from the wrongful breach of a contract, an injured party must specifically plead the facts showing the damage which has resulted to him because of the wrongful act

---

that in March of 1950 the JORDAN SUPPLY COMPANY offered 45,000 B.T.U. Natural Gas heaters F.O.B. to Customer's place of business at $56.00 each, in the territory represented by the OAKLAND SHEET METAL SUPPLY COMPANY.

### X

"That in February of 1950, the Cross-defendants authorized CHARLES H. WHITE of Burlingame, California, to offer the 45,000 B.T.U. Heaters at $52.00 each, less 10% in single units to the consumer. The market established by Cross-Plaintiff for said heater for a single unit was $118.00.

"That the net profit derived by Cross-plaintiff in the sale of said heaters was $8.00 per heater sold.

### XI

"That Cross-Plaintiff has performed all of the things to be performed by said Cross-Plaintiff, and by reason of the breach of the agreement as hereinabove alleged on the part of the Cross-defendants, Cross-Plaintiff has been damaged in the sum of $15,000.00 as hereinabove alleged and in the further sum of $8.00 for each heater sold in the district of Northern California, North of Bakersfield and in the states of Oregon and Washington.

"WHEREFORE, Cross-Plaintiff prays for a judgment against the Cross-defendants, and each of them, in the sum of $15,000.00; for the sum of $8.00 for each heater sold in the district of Northern California north of Bakersfield and in the States of Oregon and Washington and for costs, and for such other and further relief as Court deems just.

GORDON LESLIE COOPER
Gordon Leslie Cooper
Attorney for Defendant & Cross Plaintiff

"FOR A SECOND CAUSE OF ACTION, Cross-Plaintiff alleges:

### I

"Cross-Plaintiff incorporates Paragraphs I and II of The Second Amended Cross-Complaint, and by reference makes it a part of this cause of action, the same as if said paragraphs were set forth herein in full.

### II

"That on July 28, 1949, the Cross-defendants sold to Cross-Plaintiff one thousand of the Modern Heat Panels, at a cost of $51.85 each, and that Cross-defendants warranted said heat panels to be in good order, and thereby induced the Cross-plaintiff to purchase the same at said price.

### III

"That the said Modern Heat Panels were not in good order, whereby Cross-Plaintiff was damaged in the sum of $5,000.00.

"WHEREFORE, Cross-Plaintiff prays judgment against the Cross-defendants, and each of them, in the sum of $15,000.00 damage; that the Cross-defendants be required to account to Cross-Plaintiff for $8.00 for each heater sold within said district, and any and all profits collected by said Cross-defendants within the district described in Cross-Plaintiff's Second Amended Cross Complaint from the sale of said heaters; for costs and for such other and further relief as is just.''

of the other party to the contract, and a general allegation of damages is insufficient as against a special demurrer for uncertainty and/or unintelligibility. (*Judson Mfg. Co. v. Lutge,* 174 Cal. 566, 567 [163 P. 1017] ; *Hamberger-Polhemus Co. v. Hind, Rolph & Co.,* 81 Cal.App. 624, 627 [4] et seq. [254 P. 615].)

For the foregoing reasons the order is affirmed.

Moore, P. J., and Fox, J., concurred.